UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES MARCUM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:10CV02217 JCH |
| ) | |
| RETIREMENT PLAN FOR ) | |
| HOURLY-RATED EMPLOYEES OF ) | |
| NORANDA ALUMINUM, INC., et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Defendants Retirement Plan for Hourly-Rated Employees of Noranda Aluminum ("the Plan") and Noranda Aluminum, Inc. ("Noranda") (collectively "Defendants") move to set aside the default judgment entered in favor of Plaintiff James Marcum ("Plaintiff"). (Doc. No. 20). Defendant's Motion to Set Aside Default Judgment ("Motion") is fully briefed and ready for disposition.

## BACKGROUND

Plaintiff filed this action against Defendants on November 29, 2010, seeking early retirement benefits under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. (Complaint, Doc. No. 1). Plaintiff was employed by Noranda and worked at Noranda's facility in New Madrid, Missouri. (Affidavit of Wendy Boehme ("Boehme Aff."), Doc. 21-1, ¶ 7). Plaintiff served process in the instant case upon Noranda's registered agent in the state of Missouri, CT Corporation. (Response in Opposition to Defendants' Motion to Set Aside Default Judgment ("Response"), Doc. No. 26, p. 4; Bohme Aff., ¶¶ 12–13). CT Corporation had been instructed by Noranda to forward legal documents to Noranda's headquarters in Tennessee. (Bohme Aff., ¶ 12). CT Corporation, however, forwarded the service of process in the instant case to Noranda's branch

in New Madrid, Missouri, where Plaintiff worked. (Bohme Aff., ¶¶ 7, 13). This branch office does not have a legal department; the Tennessee headquarters handles all litigation matters on behalf of Noranda. (Id., ¶ 14). Noranda's then-Vice President of Human Resources, Alan K. Brown, claims that he never received a copy of the summons or Complaint in this case until after Defendants' time for filing had past. (Affidavit of Alan K. Brown ("Brown Aff."), Doc. No. 21-2, ¶ 4). Moreover, Defendants claim to have conducted a diligent search but have been unable to locate either the original summons or Complaint. (Bohme Aff., ¶ 15; Brown Aff., ¶ 7). Defendants claim that they did not respond to the Complaint within the required time for these reasons. (Defendants' Memorandum in Support of Defendants' Motion to Set Aside Default Judgment ("Memorandum"), Doc. No. 20, p. 1).

On January 12, 2010, this Court entered a default judgment in Plaintiff's favor after Defendants failed to file the responsive pleading required by Federal Rule of Civil Procedure 12. (Doc. No. 11).[1] Plaintiff alleges that he mailed the motion for default that precipitated this judgment to both Defendants at the Tennessee headquarters. (Response, p. 2). This mailing did not contain an attention line. (See id.). Defendants claim that they were never aware of this mailing. (Brown Aff., ¶¶ 8, 10).

Defendants move to set aside the default judgment under Federal Rules of Civil Procedure 55© and 60(b). This Motion was filed on February 7, 2011, which was sixty-one days after the summons and Complaint were served on CT Corporation, and twenty-six days following the entry of default judgment. (Doc. No. 20; see also Memorandum, p. 9).

---

[1]The Clerk's entry of default was filed on December 27, 2010. (Doc. No. 8).

**DISCUSSION**

Defendants' Motion is based on two arguments. First, Defendants argue that the judgment was void, at least as to the Plan, for lack of proper service of process. (Motion, ¶ 1.) Second, Defendants argue that they failed to respond to the Complaint as a result of mistake, inadvertence, or excusable neglect. (Id., ¶ 2).

In determining whether the excusable neglect standard of Federal Rule of Civil Procedure 60(b)(1) is satisfied, the Court must not "focus narrowly on the negligent act that caused the default." See Union Pac. R.R. Co. v. Progress Rail Servs. Corp., 256 F.3d 781, 782 (8th Cir. 2001). Rather, the proper inquiry is whether the act was excusable, which requires a consideration of "'all relevant circumstances surrounding the party's omission.'"[2] Id. (quoting Pioneer Investment Servs. Co. v. Brunswick Assocs. Ltd., 507 U.S. 380, 395 (1993)). The factors relevant to this analysis are the length of the delay and its potential impact on judicial proceedings; the reason for the delay, including whether it was within the reasonable control of the movant; whether the movant acted in good faith; the danger of prejudice to the non-moving party; and whether there is a meritorious defense to the claim underlying the default judgment. Id. In weighing these factors, the Court is mindful of the Eighth Circuit's "frequently endorsed [and] strong judicial policy against default judgments." See Oberstar v. F.D.I.C., 987 F.2d 494, 504 (8th Cir. 1993); see also Johnson v. Dayton Elec. Mfg. Co., 140 F.3d 781, 785 (8th Cir. 1998) ("[W]hen the grant of a default judgment precludes consideration of the merits of a case, even a slight abuse of discretion merits reversal."). This equitable analysis is to be conducted within this Court's sound discretion. See Johnson, 140 F.3d at 785; Union Pac., 256 F.3d at 782.

---

[2] Excusable neglect "is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." Union Pac., 256 F.3d at 782. The dispute as to this issue turns on whether Defendants' negligence was excusable, not whether it was negligent. (See Response, p. 7 (characterizing failure to respond as "[i]nexcusable [n]egligence")).

1. Length of the Delay and Its Potential Impact on Judicial Proceedings

In Union Pacific, the defaulting party acted promptly upon learning of the default judgment; it filed its motion to set aside the default judgment three weeks after it had notice of the default, which was less than six months after the filing of the complaint. See 256 F.3d at 783. The Eighth Circuit held that such a "short-term delay [did not] undermine [the non-defaulting party's] ability to advance its claim." Id.

In the instant case, Defendants' Motion was filed just over three weeks after the default judgment was entered and approximately two months after the Complaint was filed. Because the timing of Defendants' response in this case is substantially similar to that of the defendants in Union Pacific, this factor "weighs heavily in favor of [the] motion to set aside the default judgment." See id.

2. Reason for the Delay And Whether It Was Within the Reasonable Control of Movant

In Feeney v. AT & E, 472 F.3d 560 (8th Cir. 2006), the defaulting party was properly served with a motion for summary judgment by mail and, when he failed to respond, received a letter from the presiding judge warning that default judgment would be entered against him if he did not respond properly. Id. at 562. The defaulting party's travel obligations made it difficult for him to regularly check his mail, so he asked a relative to do so for him. Id. at 563. The defaulting party, however, failed to make the proper arrangements when his private mailbox company began to require written authorization of the mailbox owner for another person to retrieve the mail. Because the defaulting party was traveling for two months, during which time the motion and the warning letter were sent, he did not receive them. Id. The Eighth Circuit reasoned that it was "careless to the point of

indifference" for the party to leave town for two months with a lawsuit pending without making adequate arrangements to receive his correspondence. See id.

Unlike the defaulting party in Feeney, Noranda made arrangements to receive legal documents. Noranda instructed CT Corporation, its registered agent in Missouri, to forward legal documents to its Tennessee headquarters. Despite this instruction, CT Corporation sent the documents to Noranda's New Madrid branch, where the documents were last seen. Although Noranda's system was not perfect, it was certainly not "careless to the point of indifference" to rely on the professionals at CT Corporation to carry out Noranda's specific instructions. See id.; see also Union Pac., 256 F.3d at 782–83 (recognizing that logistical errors by a corporation's legal department can constitute excusable neglect).

The fact that Defendants did not receive the notice of default judgment that Plaintiff served by mail upon Noranda's Tennessee headquarters, however, suggests that Noranda may have had some level of indifference to logistical matters within its reasonable control. See Feeney, 472 F.3d at 563. If this notice had made it into the hands of the appropriate decision maker, which it appears not to have done, this matter may have been resolved before the default judgment was entered. Nevertheless, because Defendants were not actually aware of the pendency of this action before this motion was served upon them, Defendants cannot be said to be as culpable as the defaulting party in Feeney, who left his home for two months when he knew he was a party to litigation without arranging for appropriate mail delivery, thereby effectively shutting himself off from any way of learning about developments in his case. See id.

Thus, Noranda had a reasonable system for handling service of process, which weighs in Defendants' favor, and Noranda failed to have a mail system in place that would ensure that the

motion for default judgment would be delivered to the proper individual, which weighs in Plaintiff's favor. The Court finds that this factor is essentially neutral.

3. Movant's Good Faith

Plaintiff argues that Defendants' failure to respond to the Complaint in a timely fashion is not an isolated mistake because Defendants did not respond within the designated time to Plaintiff's claim for benefits and to Plaintiff's administrative appeal from Defendants' denial of benefits. (Response, pp. 7–8). Defendants, however, acted promptly after they first learned of the instant litigation, i.e., the entry of the default judgment. Defendants' quick response to the default judgment suggests that Defendants were exercising some meaningful level of responsibility in their legal affairs. See Union Pac., 256 F.3d at 782–83 (acting promptly after discovering error made by legal department constituted excusable neglect). A basic concern in determining whether a mistake is excusable is how the party behaved once it had actual notice of the pending litigation. See id. at 783 (reasoning that a mistake that left a party unaware of a pending lawsuit is evidence of excusability); cf. Feeney, 472 F.3d at 563 (reasoning that negligence "at a time when [a party is] a defendant in a pending legal proceeding" is evidence of a lack of excusability). Defendants' failure to respond timely to Plaintiff's ERISA claim provides some evidence of lack of good faith in its pre-litigation actions. Defendants' prompt action once Defendants were actually aware of the current litigation, however, outweighs any inference that can be drawn from Defendants' actions before the complaint was filed. Therefore, the Court finds that this factor weighs slightly in favor of Defendants.

4. Danger of Prejudice to the Non-Moving Party

"[P]rejudice may not be found from delay alone or from the fact that the defaulting party will be permitted to defend on the merits." Johnson, 140 F.3d at 785. The party supporting the default

judgment must be prejudiced "in a more concrete way, such as 'loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion.'" Id. (citation omitted).

More than fifteen months have passed since Plaintiff filed his claim application for benefits with Defendants. (Response, p. 9). "[T]he hardship [P]laintiff has faced by being deprived of the rights promised under the Plan document" is the prejudice of which Plaintiff complains. (Id.) But a delay in receiving the desired relief is not the type of prejudice for which the excusable neglect standard is concerned. See Johnson, 140 F.3d at 785. In reaffirming this rule, the Johnson court was addressing a products liability claim that arose out of a fire that claimed the life of children and the plaintiff's home. Id. at 782. The defendant, who manufactured the product at issue, missed a filing deadline and had a default judgment entered against it. Id. at 782–83. Noting the "potential injustice" to the defendant if the case were disposed of by default, the Eighth Circuit reaffirmed what "numerous decisions make clear[:] prejudice may not be found from delay alone or from the fact that the defending party will be permitted to defend on the merits." See id. at 785. This was so even though a year and a half had passed since the plaintiff first filed her lawsuit by the time the Eighth Circuit reversed the trial court's failure to set aside the default judgment. See id. at 781–82.

Plaintiff's argument simply does not address the relevant types of prejudice such as lost evidence, discovery complications, and greater opportunities for fraud and collusion. See id. at 785. Although the one and a half years that have passed since Plaintiff began his attempt to attain ERISA benefits are no doubt a hardship to Plaintiff, this does not constitute prejudice, just as the one and a half years that had passed in Johnson did not. Therefore, this factor weighs in favor of Defendants.

5. <u>Meritorious Defense</u>

In considering the meritorious defense factor, "the issue is whether the proffered evidence 'would permit a finding for the defaulting party,' not whether it is undisputed." <u>Johnson</u>, 140 F.3d at 785 (citation omitted). Defendants have put forward evidence that

> the Plan Administrator notified [Plaintiff] that he was not eligible for Rule of 65 benefits because he was not permanently disabled under the terms of the Pension Plan. This determination was based upon medical information submitted by the Plaintiff, an independent review of [Plaintiff]'s medical records by the Medical Review Institute of America, and a thorough review of the case by the Plan Administrator.

(Boehme Aff., ¶ 9). In response, Plaintiff argues that "[t]he conclusion of [D]efendants' medical reviewer are inaccurate[] for the reasons stated in [P]laintiff's Motion for Default." (Response, p. 10). Plaintiff further asserts that Defendants have "deprived themselves of the deferential standard normally associated with benefit plan determinations" by "failing to timely respond to [P]laintiff's administrative appeal." (<u>Id.</u>)

The mere existence of contradictory testimony does not mean that a defaulting party cannot prevail at trial. <u>See</u> <u>Johnson</u>, 140 F.3d at 785. Moreover, assuming *arguendo* that Defendants have deprived themselves of a deferential review standard, as Plaintiff argues, Defendant nevertheless could prevail at trial. Therefore, this factor weighs in favor of Defendants.

6. <u>Weighing the Factors</u>

Based upon the foregoing discussion, the Court finds that the Defendants' failure to file a timely responsive pleading was the result of excusable neglect.[3] The delay was relatively short once

---

[3] Because Defendants' failure to file a timely responsive pleading was attributable to excusable neglect, the Court is not required to, and therefore does not, address Defendants' argument that the default judgment was void for improper service of process. This argument turns, at least as to the Plan, on the effect of 29 U.S.C. § 1132(d)(1). There is some disagreement among other courts as to whether service that would be proper upon the employer under the general rules of Federal Rule of Civil Procedure 4(e) can be considered proper service upon the Plan, notwithstanding section 1132(d)(1), when there is a designated plan administrator. <u>Compare</u> <u>Madaffari v. Metrocall Cos.</u>, No. 02C4201, 2004 WL 783060, at *2 (N.D. Ill. Jan. 12, 2004) (holding that service upon CEO of

Defendants had actual notice of the instant litigation, there is no risk of prejudice to Plaintiff, and Defendants' have a defense that could conceivably prevail at trial. See Johnson, 140 F.3d at 784-85 (holding that where a failure is marginal, relief should be granted if the defaulting party has a meritorious defense and if the non-defaulting party would not suffer significant prejudice).

With respect to the element of good faith, Plaintiff has put forward a legal argument that, if accepted, would serve as a sanction for this pre-litigation delay. (See Response, p. 10). Because Plaintiff will have the opportunity to raise this legal argument during the course of this action, the good faith factor does not weigh against Defendants.

Finally, even though at least part of the reason for the delay in this case may have been within the reasonable control of Defendants, this does not change the analysis. See Union Pac., 256 F.3d at 782–83 ("[A] district court ought not to focus narrowly on the negligent act that caused the default," but rather it should "ask whether the act was itself in some sense excusable"). Taking account of all of the relevant circumstances discussed above, see id. at 782, the Court finds that this factor is outweighed by the others.

---

employer rather than officers listed as plan administrator and agent for service of process was insufficient as to a plan under § 1132(d)(1) regardless of actual notice to plan), with Aronoff v. Serv. Employees Local 32-BJ AFL-CIO, No. 02civ5386, 2003 WL 1900832, at *1–2 (S.D.N.Y. Apr. 16, 2003) (holding that § 1132(d)(1) is not a mandatory service rule so service upon secretary of employer was proper under Fed. R. Civ. P. 4(e), especially because there was actual notice to the plan). Because there was excusable neglect in this case, the Court declines to address this disagreement.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Set Aside Default Judgment (Doc. No. 20) is **GRANTED**.

Dated this  21st   day of April, 2011.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE